COPY

1  SEYFARTH SHAW LLP
   Jon D. Meer (SBN 144389)
2  jmeer@seyfarth.com
   Casey J.T. McCoy (SBN 229106)
3  cjtmccoy@seyfarth.com
   2029 Century Park East, 35th Floor
4  Los Angeles, California  90067-3021
   Telephone:  (310) 277-7200
5  Facsimile:   (310) 201-5219

6  SEYFARTH SHAW LLP
   Simon L. Yang (SBN 260286)
7  syang@seyfarth.com
   333 South Hope Street, Suite 3900
8  Los Angeles, California  90071-1406
   Telephone:  (213) 270-9600
9  Facsimile:   (213) 270-9601

10  Attorneys for Defendants
    BP WEST COAST PRODUCTS LLC;
11  BP PRODUCTS NORTH AMERICA INC.;
    DALE ERICKSON; DAN ROBINSON; and
12  MARYCLAIRE HAMMOND

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15  SCOTT TENNEY, an individual,          )  Case No. ~~SACV12 - 1493~~ JVS (RNBx)
                                          )
16            Plaintiff,                  )
                                          )
17       vs.                              )  **DEFENDANTS' NOTICE OF REMOVAL**
                                          )  **OF CIVIL ACTION TO UNITED**
18  BP WEST COAST PRODUCTS, LLC, a        )  **STATES DISTRICT COURT PURSUANT**
    Delaware Limited Liability Company;   )  **TO DIVERSITY OF CITIZENSHIP**
19  BP PRODUCTS NORTH AMERICA,            )  **JURISDICTION [28 U.S.C. §§ 1332, 1441]**
    INC. a Maryland corporation; DALE     )
20  ERICKSON, an individual; DAN          )  [Orange County Superior Court Case No. 30-
    ROBINSON; an individual;              )  2-12-00589281]
21  MARYCLAIRE HAMMOND, an                )
    individual; and DOES 1 - 50 inclusive,)  *Complaint Filed:*          August  7, 2012
22                                        )
              Defendants.                 )
23                                        )
                                          )
24                                        )         By Fax
                                          )
25                                        )
                                          )
26  ─────────────────────────────────────

27

28

─────────────────────────────────────────────────────────────────
NOTICE OF REMOVAL OF CIVIL ACTION TO DISTRICT COURT PURSUANT TO DIVERSITY JURISDICTION

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF SCOTT TENNEY AND HIS ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that Defendants BP Products North America Inc. ("BP Products"), BP West Coast Products LLC ("BP West"), Dale Erickson ("Erickson"), Dan Robinson ("Robinson") and Maryclaire Hammond ("Hammond") (collectively, "Defendants") hereby file this Notice of Removal pursuant to 28 U.S.C. sections 1332 and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of Orange, to the United States District Court for the Central District of California, and states that removal is proper for the following reasons:

**I.   BACKGROUND**

   1.   On August 7, 2012, an unverified Complaint (the "Complaint") was filed on behalf of Plaintiff Scott Tenney ("Plaintiff") in the Superior Court of the State of California, County of Orange, entitled, "*SCOTT TENNEY v. BP WEST COAST PRODUCTS, LLC; BP PRODUCTS NORTH AMERICA, INC.; DALE ERICKSON, DAN ROBINSON; AND MARYCLAIRE HAMMOND; and DOES 1 through 100, inclusive,*" designated Case No. 30-2012-00589281 (the "State Court Action").

   2.   The Complaint alleges twelve causes of action for: (1) "Disparate Treatment Based on Medical Condition"; (2) "Discrimination and Failure to Prevent Discrimination Based on Disability"; (3) "Harassment/Hostile Work Environment"; (4) "Failure to Provide Reasonable Accommodation for Medical Condition"; (5) "Failure to Engage in the Interactive Process"; (6) "Retaliation in Violation of Public Policy"; (7) "Failure to Take Steps to Prevent Harassment and Discrimination in the Work Place"; (8) "Failure to Pay Overtime Wages"; (9) Failure to Provide Accurate Wage Statements"; (10) "Defamation"; (11) "Intentional Infliction of Emotional Distress;" and (12) "Negligent Infliction of Emotional Distress."   True and correct copies of the: Summons; Complaint;

Certificate of Assignment; Civil Cover Sheet; and ADR Package are collectively attached as Exhibit "A" to the Declaration of Casey J.T. McCoy ("McCoy Decl."), filed herewith.

3.    On or about August 8, 2012, Defendants first received notice of the Orange County State Court Action when defendant BP Products and BP West were served with Plaintiff's Summons and Complaint, and accompanying documents.  On or about August 12, 2012 Defendant Dale Erickson was served with Plaintiff's Summons and Complaint, and accompanying documents.

4.    On or about August 13, 2012, Defendants agreed to accept service on behalf of individual defendants Dan Robinson and Maryclaire Hammond.  On August 27, 2012, Plaintiff mailed a Notice and Acknowledgement of Receipt to serve defendants Robinson and Hammond.  Counsel signed the Notice of Acknowledgment on behalf of Defendants Robinson and Hammond on September 5, 2012.  A true and correct copy of the signed Notice and Acknowledgment of Receipt is attached as Exhibit "B" to the McCoy Declaration.

5.    As discussed in greater detail below, jurisdiction based on diversity of citizenship is proper because Defendant BP Products is not a citizen of California.  Although Plaintiff also names BP West, Erickson, Robinson and Hammond as defendants, they are "sham" defendants, such that for purposes of diversity of citizenship jurisdiction, they can be disregarded.

## II.    TIMELINESS OF REMOVAL

6.    This Notice of Removal is timely because it is being filed within thirty (30) days of BP Products' and BP West's receipt of the Summons and Complaint on August 8, 2012 and within one (1) year of the commencement of this action.  28 U.S.C. § 1446(b).  BP Products and BP West were the first Defendants served with the Summons and Complaint, on August 8, 2012.

## III.    PROCEEDINGS IN STATE COURT

7.    There have been no proceedings scheduled in the Superior Court.  Exhibit "A" attached to the Declaration of Casey J.T. McCoy ("McCoy Decl.") constitutes all of

2

1  the pleadings that have been served on Defendants prior to the filing of this Notice of

2  Removal.  (McCoy Decl., ¶ 2 and Ex. A.)

3  **IV.     DIVERSITY OF CITIZENSHIP JURISDICTION**

4       8.     The Complaint, and each alleged cause of action contained therein, may be

5  properly removed on the basis of diversity of citizenship jurisdiction, in that it is a civil

6  action between citizens of different states and the matter in controversy exceeds the sum

7  of $75,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(a)(1), 1441(a).

8       **A.     Plaintiff Is A Citizen Of California**

9       9.     For diversity purposes, a person is a "citizen" of the state in which he or she

10  is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

11  A party's residence is *prima facie* evidence of his domicile.  *State Farm Mut. Auto Ins.*

12  *Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Plaintiff's own allegations in the

13  Complaint establish that he is a California citizen.  Specifically, Plaintiff alleges that

14  "Plaintiff … is presently, and at all relevant times herein, was a resident in the State of

15  California, County of Orange."  (Compl., ¶ 1.)

16       10.     Moreover, throughout Plaintiff's employment with BP Products, Plaintiff,

17  without exception, has listed California addresses for the purposes of his personnel file,

18  payroll checks, and tax withholdings demonstrating "an intent to remain" in California,

19  establishing Plaintiff's domicile in California.  (Declaration of  Sondra G. Fisher ("Fisher

20  Decl."), ¶ 2.)  Plaintiff has not informed Defendants of a change in his address or

21  residence.  (*Id.*, ¶ 3.)  Moreover, Plaintiff remains employed by BP Products at its

22  facility located in Carson, California.  (*Id.*, ¶ 4.)

23       11.     Accordingly, Plaintiff is and, at all relevant times, was a citizen and resident

24  of the State of California.

25       **B.     BP Products Is Not A Citizen Of California**

26       12.     BP Products is now and, was at the time of the filing of this action, a citizen

27  of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1).

28  Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to be a citizen of

3

1   any State by which it has been incorporated and of the State where it has its principal

2   place of business."

3       13.   The United States Supreme Court in *The Hertz Corp. v. Friend*, 559 U.S. __,

4   130 S. Ct. 1181, 1192 (2010), held that a corporate entity's "principal place of business"

5   for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center"** . . . .

11  *Id.* at 1192 (emphasis added).

12      14.   BP Products is a corporation that at all relevant times during this litigation

13  was organized and existing under the laws of the State of Maryland.  (Declaration of

14  Steven C. Lee ("Lee Decl."), ¶ 2.)  BP Products' headquarters are located at 150 W.

15  Warrenville Rd., Naperville, Illinois 60563.  (*Id.*, ¶ 3.)  The majority of BP Product's key

16  officers and Board of Directors work out of Naperville and Chicago Illinois, and direct,

17  control, and coordinate BP's activities from Illinois.  (*Id.*, ¶ 3.)  Specifically, seven of the

18  nine members of the Board of Directors work out of Illinois.  (The other two Directors

19  work out of Houston and the State of Washington.) (*Id.*)  The President of BP Products

20  works out of Naperville, Illinois.  (*Id.*)  The Chief Financial Officer and Corporate

21  Treasurer work out of Chicago, Illinois.  (*Id.*)  The Vice President & General Tax Officer

22  and Corporate Secretary work out of Houston.  (*Id.*)  These individuals represent the

23  senior leadership of BP Products and are responsible for the direction, control, and

24  coordination of all corporate planning and strategy.  (*Id.*)  None of them work out of

25  California.  (*Id.*)

26      15.   As BP Products is incorporated in Maryland and its "actual center of

27  direction, control, and coordination" or "nerve center" is in Naperville, Illinois, it is not a

28

NOTICE OF REMOVAL OF CIVIL ACTION TO DISTRICT COURT PURSUANT TO DIVERSITY JURISDICTION

1    citizen of the State of California.  Rather, BP Products is a citizen of the State of

2    Maryland and the States of Illinois. *The Hertz Corp.*, 130 S. Ct. at 1192.

3         **C.**   **Because BP West, Erickson, Robinson and Hammond Are Sham**
     **Defendants, Their Citizenship Should Be Disregarded For Determining**
4    **Diversity**

5        16.   Defendants BP West, Erickson, Robinson and Hammond must be

6    disregarded for purposes of diversity because they are "sham" defendants, *i.e.*, they

7    cannot be found liable as a matter of law.  *See, e.g., Morris v. Princess Cruises, Inc.*, 236

8    F.3d 1061, 1067 (9th Cir. 2001).

9        17.   It is well-settled that a party cannot attempt to defeat diversity of citizenship

10   jurisdiction by adding "sham" defendants.  *See, e.g., Morris*, 236 F.3d at 1067; *Dodson v.*

11   *Spillada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *TPS Utilicom Serv., Inc. v. AT*

12   *& T Corp.*, 223 F. Supp. 2d 1089, 1100-1101 (C.D. Cal. 2002) (same).

13       18.   Joinder of a defendant is a "sham" and is fraudulent if the defendant cannot

14   be liable to the plaintiff on any theory alleged in the complaint.  *See, e.g., Ritchey v.*

15   *Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*,

16   811 F.2d 1336, 1339 (9th Cir. 1987).

17       19.   When determining whether a defendant is fraudulently joined, "[t]he court

18   may pierce the pleadings, consider the entire record, and determine the basis of joinder by

19   any means available." *Lewis v. Time Inc.*, 83 F.R.D. at 455 ("[I]t is well settled that upon

20   allegations of fraudulent joinder . . . federal courts may look beyond the pleadings to

21   determine if the joinder . . . is a sham or fraudulent device to prevent removal.");

22   *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to present the facts showing the

23   joinder to be fraudulent").

24       20.   If the facts reveal that joinder is fraudulent, the defendant may be dismissed

25   from the action pursuant to Rule 21 of the Federal Rules of Civil Procedure, which

26   provides that "[p]arties may be dropped or added by order of the court on motion of any

27   party ... at any stage of the action and on such terms as are just." *Gasnik v. State Farm*

28   *Ins. Co.*, 825 F. Supp. 245, 248-249 (E.D. Cal. 1992).

21.     Plaintiff's Complaint arises from an employment dispute with his employer, BP Products. However, Plaintiff has also asserted claims against BP West and against individual defendants Erickson, Robinson and Hammond for "Harassment/Hostile Work Environment", "Failure to Take Steps to Prevent Harassment and Discrimination in the Workplace", "Defamation" and "Intentional Infliction of Emotional Distress."

22.     BP West was not Plaintiff's employer during the entire period covered by his claims and is currently not his employer. Additionally, the individual defendants are not liable for the claims alleged against them in the Complaint, as a matter of law, because (1) Plaintiff's harassment claim is solely based on non-actionable personnel decisions, (2) there is no separate cause of action for "failure to prevent" harassment and discrimination, (3) Plaintiff's defamation claim is based solely on inactionable statements regarding an employee's work performance, (4) the managerial privilege precludes individual liability for managers for tort claims arising from the course and scope of employment, such as Plaintiff's claims for intentional and negligent infliction of emotional distress and (5) the Workers' Compensation Act, Cal. Lab. Code § 3600 *et seq.* (the "WCA"), provides Plaintiff's exclusive remedy for injuries arising out of and in the course of employment and preempts separate causes of action for emotional distress.

### 1.     BP West Cannot Be Liable to Plaintiff Because It Was Not His Employer During The Entire Period Covered By His Claims

23.     In this employment litigation, Plaintiff has sued "BP Products North America, Inc." and "BP West Coast Products, LLC". However, during the entire period covered by Plaintiff's claims, his employer has always been "BP Products North America Inc.," not BP West Coast Products LLC. Plaintiff has erroneously sued BP West, which is not a proper party because it is not his employer and all of Plaintiff's claims arise from the employment relationship. As a non-employing entity, BP West cannot be liable to Plaintiff on any theory alleged in his Complaint.

24.     Plaintiff's twelve causes of action against BP West all require an employment relationship. His first seven causes of action for claims related to

6

discrimination, harassment and retaliation are based on California Government Code § 12900 *et seq*., which requires an employment relationship.  California Government Code section 12940 states, in relevant part:

> It is an unlawful **employment practice**, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:   (a) For an **employer**, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Cal. Gov. Code § 12940(a) (emphasis added).  The term employer is defined as:

> "Employer" includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities. . .

*Id.*

25.     Similarly, only employers can be liable for a failure to pay overtime or provide accurate wages statements (i.e., Plaintiff's Eighth and Ninth causes of action for violation of Labor Code §§ 510, 1194 and 226.).  The Wage Orders define the employment relationship in actions for unpaid overtime.  *Martinez v. Combs*, 49 Cal. 4th 35, 52 (2010) (finding that the "statutory and historical context" of §1194 shows that the legislature intended the wage orders to define the employment relationship in actions for unpaid overtime).  The California Wage Orders define an employer as "any person . . . who directly or indirectly or through an agent or any other person, **employs or exercises control over the wages, hours or working conditions of any person.**"[1]  *Id.* at 64; *see*

---

[1] The Wage Orders define "employ" as "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Martinez*, 49 Cal. 4th at 52.

7

1    *generally* Wage Order No. 1-2001, § 2(F) (codified at 8 Cal Code Regs. § 11010(2)(D))

2    (emphasis added).

3        26.    Additionally, Plaintiff's common law defamation and emotional distress

4    claims (i.e., Tenth, Eleventh and Twelfth Causes of Action) are based purely upon

5    conduct relating to Plaintiff's employment and are entirely duplicative of his statutory

6    claims. (Compl., ¶¶ 13-16, 67-68.)  Specifically, Plaintiff alleges that Erickson

7    "published false, misleading and derogatory statements about Plaintiff and **Plaintiff's**

8    **work performance**." (Compl., ¶ 67 (emphasis added).)  Plaintiff also alleges that

9    Robinson made comments "**to other employees of BP**." (Compl., ¶ 68 (emphasis

10   added).)  He alleges these acts and the alleged discrimination, harassment and retaliation,

11   including his employer's alleged refusal to return him to work, caused him to suffer

12   emotional distress. (Compl., ¶¶ 73-84.)  He then alleges BP West "authorized, condoned

13   and/or ratified" the conduct. (Compl., ¶ 72.)

14       27.    BP West **does not employ any individuals**, let alone Plaintiff.[2]  (Fisher

15   Decl., ¶ 5.)  During the entire period covered by Plaintiff's claims, he has been employed

16   by and compensated by BP Products, as his Form W-2s indicate. (*Id.*, ¶ 6.)  BP West has

17   no direction or control over Plaintiff's wages, hours or working conditions. (*Id.*, ¶ 7.)

18   Accordingly, there is no basis on which BP West could be liable to Plaintiff on any

19   theory alleged in his Complaint. (*Id.*)

20       **2.    Plaintiff's Claims Against Erickson, Robinson And**
         **Hammond Are Without Merit**

21

22       28.    Plaintiff's claims against the individual defendants Erickson, Robinson and

23   Hammond for "Harassment/Hostile Work Environment", "Failure to Take Steps to

24   Prevent Harassment and Discrimination in the Workplace", "Defamation" and

25

26   _____

27   [2] As BP West does not employ any individuals (Fisher Decl., ¶ 5), it also does not employ
     Robinson, Erickson or Hammond.  Therefore, it cannot be liable on a respondeat superior

28   theory, either.  *Cf. Kelly v. General Tel. Co.*, 136 Cal. App. 3d 278, 284 (1982).

1  "Intentional Infliction of Emotional Distress" each fail because individual supervisors or

2  managers cannot be liable for these claims, which arise from an employment relationship.

3       **a.  Erickson, Robinson And Hammond Are "Sham" Defendants As The Harassment Claim Against Them Is Based Solely On Inactionable Personnel Decisions**

5       29.   Plaintiff's Third Cause of Action for "Harassment/Hostile Work

6  Environment" under the California Fair Employment and Housing Act (the "FEHA"),

7  Cal. Gov't Code section 12965(b) the FEHA against Erickson, Robinson and Hammond

8  is without merit.  Under the FEHA, "harassment" in the workplace can take the form of

9  "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive

10  to alter the conditions of the victim's employment and create an abusive working

11  environment." *Kelly–Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 409 (1994)

12  (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  *Accord Nazir v. United*

13  *Airlines, Inc.*, 178 Cal. App. 4th 243, 263-64 (2009).  Moreover, harassing conduct takes

14  place "outside the scope of necessary job performance, conduct presumably engaged in

15  for personal gratification, because of meanness or bigotry, or for other personal motives."

16  *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998).  "Thus, harassment focuses on situations in

17  which the social environment of the workplace becomes intolerable because the

18  harassment (whether verbal, physical, or visual) communicates an offensive message to

19  the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009).

20      30.   As explained by the California Supreme Court in *Reno v. Baird*, 18 Cal. 4th

21  640 (1998), personnel-related decisions involving performance evaluations,

22  compensation, or job assignments might constitute unlawful discrimination, but cannot

23  constitute unlawful harassment.  *Id.* at 646.  This is because personnel-related decisions

24  are a normal part of an employment relationship that cannot be avoided.  On the other

25  hand, conduct that constitutes harassment is avoidable because it is not a necessary part

26  of the employment relationship.  *Id.*  In the language of the Court:

27          Making a personnel decision is conduct of a type fundamentally
            different from the type of conduct that constitutes harassment.
28          Harassment claims are based on a type of conduct that is

9

avoidable and unnecessary to job performance.  No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc., in order to carry out legitimate objectives of personnel management.

We conclude, therefore, that the Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning or harassment.  These actions are of a type necessary to carry out the duties of business and personnel management.

*Id.* at 646-47 (emphasis added).  As the Court concluded, an employee may pursue a claim for **discrimination** against his employer based on such conduct, but cannot pursue a claim for **harassment**:

These actions [including project assignments, **promotion or demotion, performance evaluations, or compensation decision**s] may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.  This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Id.* at 647 (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63-65 (1996) (emphasis added.)

31.    Plaintiff alleges that he was harassed on account of his purported medical condition.  (Compl., ¶13.)  However, none of the conduct alleged, even if true, comes close to actionable harassment.  Plaintiff alleges only personnel-related decisions that are part of the normal course of employment, as opposed to harassment, which is not part of the normal course of employment.

32.    Plaintiff's allegations are limited to Erickson purportedly questioning Plaintiff and commenting about his tardiness, which he alleges is the result of a medical condition, and then informing Plaintiff that if his tardiness does not improve his

10

performance evaluation would be affected. (Compl., ¶¶ 13, 16, 17.) Plaintiff further alleges, on information and belief, "that harassment has come in the form of unfair treatment due to Plaintiff's medical condition, wherein Plaintiff has received a below standard and inaccurate performance evaluation(s), loss of bonus pay, and denial of promotion or transfer opportunities, and demotion." (*Id.*, ¶ 16.)

33.     These are precisely the types of allegations that the California Supreme Court in *Reno* held do not amount to actionable harassment because Plaintiff has alleged routine personnel-related conduct, such as the decision to promote or demote and the completion of performance evaluations.[3] See *Reno*, 18 Cal. 4th at 646-47; *see also Hardin v. Wal-Mart Stores, Inc.*, 2012 WL 691707, at *18 (E.D. Cal. Mar. 2, 2012) ("Personnel management actions commonly necessary to carry out the duties of business and personnel management, and thus outside the purview of harassment, include 'hiring and firing, job or project assignments, office or work station assignments, **promotion or demotion, performance evaluations**, the provision of support, the assignment or nonassignment of supervisory functions' and decisions regarding meetings.") (emphasis added).

34.     Given that Plaintiff's claims are based solely on personnel decisions, Erickson, Robinson and Hammond cannot be liable, as a matter of law.  As the California Supreme Court held in *Reno*, 18 Cal. 4th at 647, only **employers** are liable for the personnel management actions of their supervisors:

> By the inclusion of the "agent" language the Legislature intended only to ensure that **employers** will be held liable if their supervisory employees take actions later found discriminatory, and that **employers** cannot avoid the liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.

---

[3] Even if certain acts could be considered outside the course and scope of the employment relationship, comments about tardiness and a possible negative performance review are not "extreme enough to amount to a change in terms or conditions of employment." *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (1999).

11

*Id.* Thus, the Court held that "it is 'inconceivable' that the Legislature simultaneously intended to subject individual non-employers to the burdens of litigating such claims. To so construe the [FEHA] statute would be 'incongruous' and 'would upset the balance' struck by the Legislature." *Id.* at 651 (citations omitted).

In *Reno*, the Court further emphasized that there is no public policy benefit associated with holding individual supervisors or managers personally liable:

> Imposing liability on individual supervisory employees would do little to enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the exercise of supervisory judgment. The minimal potential for benefit to an alleged victim juxtaposed with the potentially severe adverse effects of imposing personal liability on individual supervisory employees is an additional reason for our conclusion that this is not result intended by the Legislature.

*Id.* at 651-652 (citations omitted). The Court then cautioned that "if every personnel manager risks losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises and other economic organizations would be seriously affected." *Id.* at 652-653.

35. The Court in *Reno* stressed that a theory that imposed individual liability "would place a supervisory employee in direct conflict of interest with his or her employer every time that supervisory employee faced a personnel decision." *Id.* at 653. The Court explained that it "would coerce the supervisory employee not to make the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended." *Id.* The Court concluded that "the employee would thus be placed in a position of choosing between loyalty to the employer's lawful interests at severe risks to his or her own interests and family, versus abandoning the employer's lawful interests and protecting his or her own personal interests. The insidious pressures of such a conflict present sobering implications for the

12

1  effect of management of our industrial enterprises and other organizations of public

2  concern." *Id.* Thus, the Court determined that "we believe that if the Legislature

3  intended to place all supervisory employees in California in such a conflict of interest, the

4  Legislature would have done so . . . . *Id.*; *accord Garza v. BNSF, Co.*, 2012 WL

5  2118179 at *4 (E.D. Cal. June 11, 2012) ("FEHA does not allow for individual liability

6  for discriminatory acts.  Further, under Title VII, civil liability for employment

7  discrimination does not extend to individual agents of the employer who committed the

8  violations, even if that agent is a supervisory employee") (citing *Pink v. Modoc Indian*

9  *Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998)); *Lavery-Petrash v. Sierra*

10  *Nevada Memorial Hosp.*, 2011 WL 6302933, at *2 (E.D. Cal. Dec. 13, 2011) (dismissing

11  FEHA claims against individual defendants, with prejudice, as "any amendment would

12  be futile since "individuals who do not themselves qualify as employers may not be sued

13  under the FEHA for alleged discriminatory acts'") (citing *Reno*, 18 Cal. 4th at 663);

14  *Wong v. Thomson Reuters (Markets) LLC*, 2011 WL 2912900, at *5 (N.D. Cal. Jul. 20,

15  2011) (dismissing harassment claims against individuals based on conduct within their

16  "delegable authority and [that] may therefore only serve as a basis of a claim for

17  discrimination against the employer"); *Leland v. City & County of San Francisco*, 576 F.

18  Supp. 2d 1079, 1088 (N.D. Cal. 2008) ("under FEHA, no individual liability attaches for

19  claims of discrimination").

> **b.    Erickson, Robinson And Hammond Are "Sham"
> Defendants Because Plaintiff Cannot Maintain A Separate
> Cause Of Action For "Failure To Take Steps To Prevent
> Harassment And Discrimination"**

23    36.    Plaintiff's Seventh Cause of Action against the individual defendants is for

24  "Failure to Investigate and Prevent Harassment/ Discrimination," but there can be no

25  separate claim for "failure to investigate," "failure to prevent," or "failure to take steps to

26  prevent" discrimination or harassment.  Plaintiff alleges this claim pursuant to the FEHA,

27  Cal. Gov't Code § 12940(k), (Compl., ¶ 54), but as California's Fair Employment and

28  Housing Commission ("FEHC") has made clear, there is no "private cause of action for

an independent [section 12940](k) violation . . . [as] **the prosecution of an independent (k) violation [is] exclusively the province of the DFEH**." Defendants' Request For Judicial Notice, Ex. A (*DFEH v. Lyddan Law Group*, Case No. E-200607-A-1082-00-rs (2010)), at 2.

37.    While Plaintiff's Seventh Cause of Action is for "Failure to Investigate and Prevent Harassment/ Discrimination," Plaintiff has already pled a separate claim for "Discrimination and Failure to Prevent Discrimination" in his Second Cause of Action and a separate claim for "Harassment" in his Third Cause of Action. By including the "failure to take steps to prevent" claim, Plaintiff is essentially asking the Court to create two separate claims for each underlying statutory tort, one for the actual statutory violation and one for failing to prevent the statutory violation.

38.    *Trujillo v. North County Transit District,* 63 Cal. App. 4th 280 (1998), is directly on point. The *Trujillo* court concluded that there is no separate claim for failure to investigate, prevent, or take steps to prevent discrimination, apart from a claim of actual discriminatory conduct. *Trujillo*, 64 Cal. App. 4th at 288-89. In affirming the defendants' motion for judgment notwithstanding the verdict, the court explained:

> Plaintiffs are asking us to rule that defendants owed them, specifically, a legal duty of care to take all reasonable steps necessary to prevent discrimination and harassment from occurring, and that a breach of such duty should give rise to a private right of action for damages.
>
> However, **plaintiffs have not suggested any persuasive reasoning or authority to support their position. We do not believe the statutory language supports recovery on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred at the plaintiffs' workplace.**

*Id.* (emphasis added). The court added that it is difficult to imagine how there could be separate liability for a "failure to investigate or prevent discrimination," absent a finding of discriminatory conduct:

> Also, there is a significant question of how there could be a legal causation of any damages (either compensatory or punitive) from such a statutory violation, where the only jury

14

finding was the failure to prevent actionable harassment or discrimination, which, however, did not occur.

*Id.* at 289. *Accord Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 880 (2010) (**"[B]ecause the [FEHA] statute does not create [such] a stand-alone tort, the employee has no cause of action for failure to investigate . . . .")** (emphasis added); *Scotch v. Art Inst. of California-Orange County, Inc.*, 173 Cal. App. 4th 986, 1021 (2009) ("Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct."). As such, no defendant can be liable to Plaintiff on his Seventh Cause of Action.

39.     To the extent such a claim exists, the claim would in any event fail against the individual defendants for an additional reason. As explained above, the individual defendants cannot be liable for discriminatory acts because such acts are "personnel management actions," for which there is no individual liability. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 62 (1996). By the same logic, the individual defendants cannot be liable for any failure to prevent or investigate because the steps any individual defendant would take to prevent or investigate discrimination or harassment in the workplace also require "personnel management actions." For example, under Plaintiff's logic, any supervisor who is offered a job by an employer would assume the burden of-- and potential liability associated with--ensuring there is no workplace discrimination or harassment. This would require the individual supervisor to create and post workplace postings, provide an effective complaint mechanism, or provide training on these issues.[4]

40.     FEHA does not create that absurd result. "[I]t was not the intent of the Legislature to place individual supervisory employees at risk of personal liability for personnel management decisions." *Janken*, 46 Cal. App. 4th at 62; *Reno*, 18 Cal. 4th at 663 (addressing "whether all supervisors should be subjected to the ever-present threat of

---

[4] The only way for an employer to prevent discrimination or harassment is by making personnel-management decisions. Whether this is done through policy, postings, compensation procedures, discipline, or training, **all** steps would be personnel-management decisions.

1  a lawsuit each time they make a personnel decision" and concluding that "**by limiting the**

2  **threat of lawsuits to the employer itself . . . the Legislature has drawn a balance**

3  **between the goals of eliminating discrimination in the workplace and minimizing**

4  **the debilitating burden of litigation on individuals**") (emphasis added).  Just as the

5  individual defendants cannot be liable for personnel decisions that would prevent

6  discrimination or harassment, they also cannot be liable for personnel decisions that fail

7  to prevent discrimination or harassment.

       c.      **Erickson, Robinson And Hammond Are "Sham"**

8                    **Defendants As The Defamation Claim Against Them Is**

9                    **Based Solely On Inactionable Statements Regarding An**

10                   **Employee's Work Performance**

11     41.    Plaintiff bases his Tenth Cause of Action for "Defamation" on vague

12 statements allegedly made by Erickson in his managerial role.  Specifically, Plaintiff

13 alleges that Erickson "published false, misleading and derogatory statements **about**

14 **Plaintiff and Plaintiff's work performance**."  (Compl., ¶ 67 (emphasis added).)

15 Plaintiff also alleges that Robinson made comments "**to other employees of BP**."

16 (Compl., ¶ 68 (emphasis added).)  Besides Erickson and Robinson, the other Individual

17 Defendants allegedly "re-published same."  (Compl., ¶ 69.)  **In sum, Plaintiff complains**

18 **about (i) his co-workers' comments (ii) regarding his work performance (iii) at the**

19 **workplace.**

20     42.    It is well-settled, however, that statements relating to a plaintiff's job

21 performance cannot form the basis of a defamation claim, as a matter of law, because

22 such statements are privileged.  As explained by the California Court of Appeal in

23 *Cuenca v. Safeway San Francisco Employees Fed. Credit Union*, 180 Cal. App. 3d 985,

24 995 (1986), California Civil Code section 47(c) "squarely" protects employees from

25 liability for making statements relating to the conduct of a coworker:

26         Communications made in a commercial setting **relating to the**

27         **conduct of an employee** have been held to **fall squarely** within
        the qualified privilege for communications to interested

28         persons.

*Id.* (holding that statements that the plaintiff was "receiving kickbacks, incorrectly reporting his expenses and keeping irregular office hours" were privileged because they made internally within the company and were "directly relevant to plaintiff's fitness as manager.") (emphasis added).[5]

43.   Moreover, California courts have consistently held that statements regarding an employee's work performance constitute inactionable opinions that cannot form the basis of a defamation claim. *See, e.g., Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1154 (1995) (holding that performance evaluation accusing employee of poor performance failed to constitute slander, as a matter of law, because it was inactionable opinion); *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970-972 (1993) (holding that the employee's defamation claim based on statements made in performance evaluation failed as a matter of law because such statements were inactionable opinions).

The decision in *Jensen*, 14 Cal. App. 4th at 970-972, expressly bars defamation claims based on statements relating to job performance.  In *Jensen*, the plaintiff received performance evaluations stating that he needed to "carry his weight," "lacked direction" and was "unwilling to take responsibility" for projects assigned to him.  *Id.* at 966.  The Court of Appeal affirmed that such statements about the plaintiff could not be deemed statements of fact, a required element to sustain a claim for defamation:

> [C]ould any of the comments in [the] evaluation reasonably be interpreted as false statements of fact?  No . . . .  The communication was . . . [an] evaluation of [the employee's] performance, prepared [by the supervisor] in the course of his designated duties as [the employee's] manager.  It was one of a series of evaluations, less favorable than those that preceded or followed it.  It documented one manager's assessment of [the

---

[5]  *Accord King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440-441 (2007) (holding that the employer's statements about the reasons for the plaintiff's termination, including that he violated the company's integrity policy, were privileged pursuant to California Civil Code section 47(c)); *Williams v. Taylor*, 129 Cal. App. 3d 745, 750 (1982) (holding that statements accusing the plaintiff of questionable workplace conduct were privileged under section 47(c)); *Deaile v. Gen. Telephone Co. of Cal.*, 40 Cal. App. 3d 841, 846-847 (1974) (holding that the employer's statements that the plaintiff was terminated for falsifying her work injury were privileged under section 47(c)).

employee's] work habits, interpersonal skills and level of effort, and it outlined the employer's expectations with regard to [employee] improvement . . . .

**[E]ven if the comments were objectively unjustified or made in bad faith, they could not provide a legitimate basis for [the employee's] libel claim because they were statements of opinion, not false statements of fact.**

*Jensen*, 14 Cal. App. 4th at 970-71 (emphasis added).

44.     Here, Plaintiff vaguely alleges that defamatory statements were made about his "work performance" and that, as a result, he "has been harmed in his occupation." (Compl., ¶ 62.)  As in *Jensen*, 14 Cal. App. 4th at 970-971, Plaintiff essentially alleges that he did not like or agree with his co-workers' inactionable opinions.  Because Plaintiff's defamation claim is based entirely on statements relating to Plaintiff's job performance, the claim is barred, as a matter of law.

45.     The decision in *Sheppard v. Freeman*, 67 Cal. App. 4th 339, 346 (1998), is dispositive.  In *Sheppard*, the plaintiff sued for libel and interference with contract and prospective economic advantage.  *Id.* at 342.  The California Court of Appeal squarely addressed the issue of individual liability for supervisors and managers and explicitly held that there can be no individual liability for supervisors and managers acting within the scope of their employment, regardless of their personal motives:

Disposition of this appeal turns on our resolution of … whether an employee or former employee can sue other co-employees individually based on their conduct relating to personnel actions, *e.g.*, termination, demotion, discipline, transfers, compensation setting, work assignments, and/or performance appraisals.  We conclude that except where mandated by statute, **such actions are barred, whether or not the employees are determined to have been acting within their scope of employment and regardless of their personal motives.**

*Id.* at 343 (emphasis added).

46.     In *Sheppard*, the Court also affirmed the trial court's decision to sustain a demurrer without leave to amend as to the individual defendants named by the plaintiff

18

1   on the grounds that the individual defendants were merely making employment-related

2   decisions on behalf of the employer. *Id.* at 344.  As the Court of Appeal stressed:

> We do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision.
>
> Personnel actions are made for the benefit of the enterprise -- the employer, and it is the employer, and not the individual employees, that must bear the risks and responsibilities attendant to these actions.
>
> Naturally, personnel actions are made with the input of employees, both as part of their official duties and otherwise. Without such input, the employer would be making decisions and taking action in a vacuum, and indeed, effective management and operation of an enterprise to a significant extent depends upon the free exchange of information, concerns, and ideas of all employees.  This can hardly occur when the individual employees face the prospect of being sued for this conduct.

13  *Id.* at 346.

14      47.     As the Court in *Sheppard* further explained, individual supervisors or

15  managers should be protected from liability even if their conduct is alleged to be

16  personally motivated to benefit their own individual objectives:

> It does indeed go without saying that an ... [employee] who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery.
>
> The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all [employees], the innocent as well as the guilty, to the burden of trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in unflinching discharge of their duties.

25  *Id.* at 347 (citations omitted).

26      48.     The *Sheppard* Court then explicitly held that: **"an employee or former**

27  **employee cannot sue individual employees based on their conduct, including acts or**

28  **words relating to personnel actions."**  *Id.* at 347 (emphasis added).  *Accord Aalgaard v.*

19

*Merchants Nat'l Bank, Inc.*, 224 Cal. App. 3d 674, 684-86 (1990) (individual defendant employee's conduct was protected by the manager's privilege), *cert. denied*, 502 U.S. 901 (1991); *Becket v. Welton Becket & Assocs.*, 39 Cal. App. 3d 815, 823-24 (1974) (demurrer sustained for claims against a corporate officer acting within course and scope of employment on managerial immunity grounds); *Marin v. Jacuzzi*, 224 Cal. App. 2d 549 (1964) (demurrer sustained to claims against another employee on managerial immunity grounds).

49.     The facts alleged by Plaintiff in this case are strikingly similar to the facts in the *Sheppard* decision.  In *Sheppard*, the plaintiff alleged that his termination was "caused by a conspiracy of false reporting by co-employees." *Sheppard*, 67 Cal. App. 4th at 345.  The plaintiff further alleged that the "false" statements causing his termination were actionable as claims for libel against the individual supervisors making the statements. *Id.*

In holding that the individual supervisors could not be held individually liable for alleged defamatory statements, the California Court of Appeal held that individual supervisors and managers must be allowed to make personnel-related comments and decisions without suffering liability. *Id.*  In the words of the Court, "[a]llowing co-workers to suffer liability would be anomalous under such circumstances." *Id.*

50.     Additionally, Plaintiff's Tenth Cause of Action for "Defamation" is also an impermissible attempt to make an end-run around the California Supreme Court's decision in *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988), which specifically barred such tort claims in the employment context, with the *sole* exception of a claim for wrongful termination in violation of public policy.  In *Foley*, the court held that contract damages are the **only** available recovery in the employment context, absent a violation of public policy.  As the California Supreme Court stressed:

> [S]everal factors combine to persuade us that in the absence of legislative direction to the contrary "**contractual remedies should remain the sole available relief** . . . . [I]t is also important that employers not be unduly deprived of discretion

1 | to dismiss an employee by the fear that doing so will give rise
2 | to potential tort recovery in every case."

3 *Id.* at 696 (emphasis added).

4 Following this decision of the California Supreme Court, numerous cases have

5 similarly held that separate tort causes of action based on alleged conduct in the

6 workplace are unavailable. In *Soules v. Cadam. Inc.*, 2 Cal. App. 4th 390 (1991),

7 *disapproved on other grounds in Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (1994),

8 the California Court of Appeal stated:

9 | It has been held under *Foley* [tort] damages . . . are not
10 | recoverable . . . . "[W]e believe that focus on available contract
   | remedies offers the most appropriate method of expanding
11 | available relief . . . . **In short, an employee cannot maintain**
   | **additional tort theories against [an] employer based on the**
12 | **same underlying facts.**

13 *Id.* at 404 (emphasis added). In fact, the Court of Appeal expressly affirmed the trial

14 court's decision to sustain a motion to dismiss, without leave to amend, as to a separate

15 tort causes of action for defamation, such as claims for libel and slander:

16 | This policy [against tort claims] would be thwarted if plaintiff
   | were permitted to recover tort damages by affixing tort labels to
17 | causes of action founded on defendant's conduct [in the
   | employment relationship]. **The following tort causes of action**
18 | **[therefore] do not state a claim for relief . . . and judgment .**
   | **. . was properly entered in favor of defendants on those**
19 | **causes of action: . . . libel, slander . . . .**

20 *Id.* at 404 (citations omitted; emphasis added).[6] As a result, the defamation cause of

21 action, based purely upon conduct relating to Plaintiff's employment, is barred by *Foley*

22 and numerous related cases, as an impermissible "backdoor" attempt to obtain tort

23 damages.

24 51. Based on the authorities cited above, Plaintiff's Tenth Cause of Action for

25 "Defamation" fails as it is based entirely on statements regarding his job performance and

26 ─────────────────

27 [6] *See also Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1181 (1993) ("damages for
   emotional distress are not recoverable in [an employment] action"); *Summers v. City of
   Cathedral City*, 225 Cal. App. 3d 1047 (1990) (employee cannot recover tort damages
28 based upon alleged wrongful conduct by employer).

NOTICE OF REMOVAL OF CIVIL ACTION TO DISTRICT COURT PURSUANT TO DIVERSITY JURISDICTION

1  inactionable opinion.  Accordingly, there can be no viable defamation claim against

2  Defendants Erickson, Robinson and Hammond and they are "sham" defendants.

**d.     The Managerial Privilege Precludes Individual Liability
For Managers For Tort Claims Arising From the Course
And Scope Of Employment**

5         52.    Equally without merit are Plaintiff's claims for Intentional and Negligent

6  Infliction of Emotional Distress (i.e., the Eleventh and Twelfth Causes of Action).  As

7  with Plaintiff's claim for defamation, an employee cannot be sued for emotional distress

8  for alleged managerial conduct.  *See, e.g., Smith v. Int'l Bhd. of Elect. Workers, Local*

9  *Union 11*, 109 Cal. App. 4th 1637, 1658 (2003) (holding that claim for emotional distress

10 against manager failed, as a matter of law, because it was based on managerial conduct;

11 "because the emotional distress claims arise out of conduct for which [the individual

12 employee] cannot be held personally liable it follows he cannot be held liable for the

13 emotional distress claims either"); *Janken*, 46 Cal. App. 4th at 79-80 (reiterating that an

14 individual managerial employee cannot be liable for intentional infliction of emotional

15 distress for conduct committed within the employment relationship).  Here, all of the

16 alleged conduct was done in the context of the employment relationship.

17        53.    With respect to the emotional distress claims, Plaintiff incorporates the

18 work-related conduct alleged in connection with his other causes of action, including the

19 harassment and defamation claims discussed above.  (Compl., ¶¶ 73-74, 79-80.)  Indeed,

20 Plaintiff concedes that this conduct is work-related, as he alleges he complained to human

21 resources and expected human resources to investigate.  (Compl., ¶¶ 14, 17.)  The only

22 purportedly "new" allegations to these claims are the assertions that Defendants continue

23 to fail to engage in the interactive process and that he was unlawfully "demoted and

24 placed in a position with a reporting time [that] was designed to make it difficult for

25 Plaintiff to confirm with the terms of his return to work," (Compl., ¶¶ 75, 81), but these

26 purported acts fall squarely within his general claims of discrimination and harassment

27 and are also work-related.  Plaintiff concedes these and the other acts "were authorized,

28 condoned and/or ratified by Defendant BP."  (Compl., ¶¶78, 84.)

22

54.     The California Court of Appeal's decision in *Janken*, 46 Cal. App. 4th at 79-80, is directly on-point.  In *Janken*, as here, the employee attempted to state a claim for intentional infliction of emotional distress based on allegations that the employer and its manager engaged in discrimination.  The Court held that these allegations failed to support an intentional infliction of emotional distress claim:

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.  **A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.**

*Id.* at 80 (emphasis added).  *Accord Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1127-1129 (1989) (holding that the plaintiff's supervisor's "campaign" of discrimination and harassment were not sufficiently outrageous and extreme to support intentional infliction of emotional distress claim); *King v. AC & R Advertising*, 65 F.3d 764, 769-770 (9th Cir. 1994) (holding that discriminatory comments do not amount to extreme and outrageous conduct necessary to support intentional infliction of emotional distress claim).

55.     As Plaintiff's allegations indicate, if true, the conduct of Defendants Erickson, Robinson and Hammond that allegedly caused Plaintiff emotional distress occurred within the course and scope of employment.

56.     Under the doctrine of managerial privilege, individual managers cannot be held personally liable for tort claims brought by other employees arising from actions taken within the course and scope of their managerial capacity.  *See, e.g., McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (applying California law, court held that plaintiff's tort claims against two individual managers failed, as a matter of law, because "**[the managers'] actions, according to the complaint, had been in their managerial capacity ... [and] ratified by [their employer] ....  [I]t is clear that 'if an agent is motivated in part by a desire to benefit his principle,' his conduct is, under California law, privileged**") (emphasis added).  *Accord Sheppard*, 67 Cal. App. 4th at

23

346-347 ("it is the employer, and not the individual employees, that must bear the risks and responsibilities," and a "former employee cannot sue individual employees based on their conduct, including acts or words relating to personnel actions"); *Aalgaard*, 224 Cal. App. 3d at, 684-686 (individual defendant employee's conduct was protected from liability by the manager's privilege), *cert. denied*, 502 U.S. 901 (1991); *Becket v. Welton Becket & Assocs.*, 39 Cal. App. 3d 815, 823-24 (1974) (claims against officer dismissed on managerial immunity grounds because the officer's acts occurred within course and scope of employment); *Marin v. Jacuzzi*, 224 Cal. App. 2d 549 (1964) (claims against another employee dismissed on managerial immunity grounds).

57.     Furthermore, as discussed above, there can be no individual liability for supervisors and managers arising from personnel actions, regardless of their personal motives. *Sheppard*, 67 Cal. App. 4th at 343 ("Disposition of this appeal turns on our resolution of . . . whether an employee or former employee can sue other co-employees individually based on their conduct relating to personnel actions, *e.g.*, termination, demotion, discipline, transfers, compensation setting, work assignments, and/or performance appraisals. We conclude that . . . such actions are barred, whether or not the employers are determined to have been acting within their scope of employment and **regardless of their personal motives**.") (emphasis added). Thus, Plaintiff's allegations that he was "placed in a position with a reporting time [that] was designed to make it difficult for Plaintiff to conform with the terms of his work" and that the individual Defendants engaged in conduct "with the intend [sic] to cause Plaintiff to suffer humiliation, mental anguish and emotional distress" even if true, are not actionable.

58.     Any argument by Plaintiff that his allegation that "at all times relevant, the Individual Defendants were acting in their individual capacities as well as their capacities as employees, agents, and officers of Defendant BP" (Compl., ¶ 7) somehow saves his claims is a non-starter. By alleging that the conduct was motivated "**in part**" by the Individual Defendants' employment establishes that the doctrine of managerial immunity applies. *McCabe*, 811 F.2d at 1339 ("[I]t is clear that if an advisor is motivated in part by

1  a desire to benefit his principal, his conduct is, under California law, privileged.").

2  *Accord Kacludis v. GTE Sprints Commc's Corp.*, 806 F. Supp. 866, 872 (N.D. Cal. 1992)

3  (applying California law, tort causes of action against another were barred; "absent

4  concrete and specific allegations that [another employee's] actions were **entirely** for the

5  benefit of the individual [they are protected") (emphasis in original); *Aalgaard*, 224 Cal.

6  App. 3d at 684-86 (individual defendant employees' conduct was protected by

7  managerial immunity because the individual defendants were not acting solely to further

8  self interest), *cert. denied*, 502 U.S. 901 (1991).

9      59.    Again, because Erickson, Robinson and Hammond's alleged conduct is

10  limited to alleged managerial actions, Plaintiff's independent claims for intentional and

11  negligent emotional distress fail, as a matter of law.  If Plaintiff's alleged emotional

12  distress is the result of unlawful discrimination and harassment, his recovery of emotional

13  distress damages will be available in connection with his myriad FEHA discrimination

14  claims.

15      60.    Based on the authorities cited above, Plaintiff cannot pursue his Eleventh

16  and Twelfth Causes of Action against Defendants Erickson, Robinson and Hammond

17  because the allegations in the Complaint concede that the individual defendants were

18  acting solely within the scope and course of employment.  Thus, Defendants Erickson,

19  Robinson and Hammond are "sham" defendants with respect to the Eleventh and Twelfth

20  Causes of Action.

21          **e.    Erickson, Robinson And Hammond Are Also "Sham"
                    Defendants Because Emotional Distress Claims In The
22                  Employment Context Are Preempted By The Exclusive
                    Remedies Of The California Workers' Compensation Act
23

24      61.    Moreover, Defendants cannot be liable for Plaintiff's Eleventh and Twelfth

25  Causes of Action for Intentional and Negligent Infliction of Emotional Distress because

26  these claims are preempted by the California Workers' Compensation Preemption Act,

27  Cal. Lab. Code § 3600 *et seq.* (the "WCA").  The WCA expressly provides that it is "the

28  sole and **exclusive** remedy for the employee" for all injuries "arising out of and in the

1   course of employment." Cal. Lab. Code §§ 3600(a), 3602(a) (emphasis added).[7]  Where,

2   as here, alleged emotional distress is caused by the employment relationship, there can be

3   no separate or independent tort cause of action outside a claim for workers' compensation

4   benefits.

5        62.    Plaintiff alleges that he (1) did not like his supervisor's allegedly derogatory

6   comments (Compl., ¶ 13); (2) did not like the response he received from "Human

7   Resources" and the "Business Unit Leader" after reporting his supervisor's conduct

8   (Compl., ¶ 14); and (3) received "his first below standard" performance evaluation

9   (Compl., ¶ 15).  Plaintiff concedes that the conduct he complains of is "all directly related

10   to, and as a result of his medical condition and complaints to HR" at work.  (Compl., ¶

11   16.)

12        63.    Courts have routinely applied the workers' compensation preemption

13   doctrine to prohibit claims of emotional distress arising from alleged discrimination at

14   work.  *See, e.g., Jones v. R.J. Donovan Correctional Facility*, 152 Cal. App. 4th 1367,

15   1382 (2007) ("Even if the **discriminatory** conduct [the plaintiff] complained about 'may

16   be characterized as intentional, unfair or outrageous, it is nevertheless covered by the

17   workers' compensation exclusivity provisions.") (emphasis added); *Davaris v. Cubaleski*,

18   12 Cal. App. 4th 1583, 1586-1588 (1993) (affirming dismissal of claims for negligent and

19   intentional infliction of emotional distress pursuant to California workers' compensation

20   preemption even though the plaintiff alleged that she was discriminated against based on

21   her religion and disability, including being subjected to slurs, such as "Jewish dictator");

22   *Valenzuela v. State of Cal.*, 194 Cal. App. 3d 916, 922-923 (1987) (holding that

23   emotional distress claims were preempted by workers' compensation even though the

24   ————————————

25   [7] The exclusivity provisions of the WCA expressly apply to all workplace injuries
   "without regard to negligence."  Cal. Lab. Code § 3600(a).  Thus, the same analysis that
26   applies to Plaintiff's claims for Intentional Infliction of Emotional Distress applies
   equally to his claim for Negligent Infliction of Emotional Distress.  *See Arendell v. Auto*
27   *Parts Club, Inc.*, 29 Cal. App. 4th 1261, 1264-65 (1994) (injuries due to employer
28   negligence are subject to WCA exclusivity.)

1    distress arose out of the employer's purported retaliatory and harassing conduct); *Pichon*

2    *v. Pacific Gas & Elec. Co.*, 212 Cal. App. 3d 488, 496, *modified, reh'g denied*, 212 Cal.

3    App. 3d 1369 (1989) (emotional distress injuries caused by termination of employment

4    are compensable under the Workers' Compensation Act, and thus claims for intentional

5    infliction of emotional distress are preempted).

6          64.    In *Cole v. Fair Oaks Fire Protect. Dist.*, 43 Cal. 3d 148 (1987), the

7    California Supreme Court held that the WCA bars emotional distress claims, such as

8    Plaintiff's, which arise from the employment relationship.  In *Cole*, the plaintiff claimed

9    he suffered from emotional distress as a result of his supervisor's "campaign of

10   harassment and job demotion" and, based on these allegations, filed a claim for

11   intentional infliction of emotional distress.  *Id.* at 152.

12         The California Supreme Court rejected the plaintiff's emotional distress claim

13   based on the exclusive remedy provision of the WCA, holding as follows:

14              An employee suffering emotional distress . . . **may not avoid
                the exclusive remedy provisions of the [WCA] by
15              characterizing the employer's decisions as manifestly
                unfair, outrageous, harassment, or intended to cause
16              emotional disturbance** . . . .

17   *Id.* at 160 (emphasis added).

18         65.    Following the holding in *Cole*, the California Supreme Court has repeatedly

19   held in subsequent cases that emotional distress claims are barred by the exclusive

20   remedy provisions of the WCA.  *See, e.g., Livitsanos v. Superior Court*, 2 Cal. 4th 744,

21   752 (1992) ("[T]he proposition that intentional or egregious conduct is necessarily

22   outside the scope of the workers' compensation scheme is erroneous . . . .  Even

23   intentional 'misconduct' may constitute a 'normal part of the employment

24   relationship.'").[8]  In sum, "[e]ven if the *discriminatory* conduct [the plaintiff]

25   ────────────────────

26   [8] *Accord Shoemaker v. Myers*, 52 Cal. 3d 1, 20 (1990) (affirming dismissal of emotional
     distress cause of action premised upon plaintiff's status as a whistle-blower; "[I]f the
27   injuries did arise out of and in the course of employment, the exclusive remedy
     provisions [of the WCA] apply notwithstanding that the injury resulted from the
     intentional conduct of the employer, and even though the employer's conduct might be
28   characterized as egregious;" "Even if such conduct may be characterized as intentional,

                                            27

1  complained about 'may be characterized as intentional, unfair or outrageous, it is

2  nevertheless covered by the [WCA] exclusivity provisions." *Jones*, 152 Cal. App. 4th

3  at 1382 (emphasis added).

4      66.    Furthermore, the fact that Plaintiff has alleged harassment does not save his

5  claims from preemption.  Courts have held that recovery for emotional distress claims

6  arising from personnel actions is limited to workers' compensation, **even when**

7  **intentional harassing conduct is alleged**.  *See, e.g., Shoemaker*, 52 Cal. 3d at 15-16

8  ("The kinds of conduct at issue (*e.g.*, discipline or criticism) are a normal part of the

9  employment relationship.  Even if such conduct may be characterized as intentional,

10 unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity

11 provisions."); *Cole*, 43 Cal. 3d at 160 ("[A]n employee suffering emotional distress

12 causing disability may not avoid the exclusive remedy provisions of the [Workers'

13 Compensation Act] by characterizing the employer's decisions as manifestly unfair,

14 outrageous, harassment, or intended to cause emotional disturbance resulting in

15 disability."); *Jones,* 152 Cal. App. 4th at 1382 (holding that a claim of infliction of

16 emotional distress based on alleged discrimination and harassment was void because

17 "[e]ven if the discriminatory conduct [the plaintiff] complained about may be

18 characterized as intentional, unfair or outrageous, it is nevertheless covered by the

19 workers' compensation exclusivity provisions") (internal quotations and citations

20 omitted); *Horn v. Bradco Int'l, Ltd.*, 232 Cal. App. 3d 653, 665 (1991) ("injuries

21 sustained and arising out of the course of employment are governed by the exclusive

22 remedy provisions of workers' compensation, . . . even though the employer's conduct

23 might be characterized as egregious and ulteriorly motivated.").

24

25 ──────────────────────────────────────────────

   unfair or outrageous, it is nevertheless covered by the [WCA] exclusivity provisions.");
26 *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008) (holding that a former-
   employee plaintiff could not pursue an emotional distress cause of action because "[t]he
27 alleged wrongful conduct . . . occurred at the worksite, in the normal course of the
   employer-employee relationship, and therefore [the WCA] is plaintiffs' exclusive remedy
28 for any injury that may have resulted").

NOTICE OF REMOVAL OF CIVIL ACTION TO DISTRICT COURT PURSUANT TO DIVERSITY JURISDICTION

67.     Similarly, the fact that Plaintiff alleges claims for both intentional and negligent infliction of emotional distress does not save his claims from preemption.  The exclusivity provisions of the WCA expressly apply to all workplace injuries "without regard to negligence."  Cal. Lab. Code § 3600(a).  Thus, Plaintiff cannot maintain claims based upon alleged negligent conduct in the workplace.  *See Arendell v. Auto Parts Club, Inc.*, 29 Cal. App. 4th 1261, 1264-65 (1994) (all injuries due to employer negligence are subject to WCA exclusivity).  *Accord Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1606 (1993) ("[A]ny claim for mere negligence . . . would be barred . . . by the [WCA], since [the plaintiff] was the employee of [defendant] and may not sue for its allegedly negligent [conduct]."); *Continental Casualty Co. v. Superior Court*, 190 Cal. App. 3d 156, 162 (1987) (negligence claim barred by WCA exclusivity).

68.     Plaintiff's claim for "negligent" infliction of emotional distress fails for an additional reason -- a claim for discrimination must be based on **intentional** misconduct.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) ("the ultimate burden of persuading the trier of fact that the defendant **intentionally** discriminated against the plaintiff remains at all times with the plaintiff") (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).[9]

69.     As Plaintiff's claims are preempted, it is undisputed that Erickson, Robinson and Hammond are "sham" defendants, such that their citizenship should be disregarded for determining diversity of citizenship jurisdiction.

**D.     Doe Defendants**

70.     Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332.  *See Fristos v. Reynolds Metals Co.*, 615 F.2d

---

[9] *Accord Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 356 (2000) ("the Ultimate burden of persuasion on the issue of **intentional** discrimination remains with the plaintiff") (emphasis added).  *Muzquiz v. City of Emeryville*, 79 Cal. App. 4th 1106, 1117 (2000) ("At all times, the burden of persuasion remains firmly on the employee to establish that the employer **intentionally** discriminated against the employee.") (emphasis added).

29

1  1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal

2  petition).  Thus, the existence of Doe defendants in this case does not deprive this Court

3  of jurisdiction.

4  **E.    Amount In Controversy**

5        71.    While Defendants deny any liability as to Plaintiff's claims, the amount in

6  controversy requirement is satisfied because "it is more likely than not" that the amount

7  exceeds the jurisdictional minimum of $75,000.  *See Sanchez v. Monumental Life Ins.*, 95

8  F.3d 856, 862 (9th Cir. 1996) ("defendant must provide evidence establishing that it is

9  'more likely than not' that the amount in controversy exceeds [the threshold] amount").

10  As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal

11  context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d

12  1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the

13  removal petition).

14        72.    In determining whether a Complaint meets the $75,000 threshold of 28

15  U.S.C. Section 1332(a), a court may consider the aggregate value of claims for

16  compensatory and punitive damages, as well as attorneys' fees.  *See, e.g., Bell v.*

17  *Preferred Life Ass. Soc'y*, 320 U.S. 238, 240 (1943) ("[w]here both actual and punitive

18  damages are recoverable under a complaint each must be considered to the extent

19  claimed in determining jurisdictional amount.") (footnote omitted); *Goldberg v. CPC*

20  *Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir.) *cert. denied*, 459 U.S. 945 (1982) (attorneys'

21  fees may be taken into account to determine jurisdictional amount).

22        73.    Based on the nature of the allegations and the damages sought, Plaintiff has

23  placed in controversy an amount exceeding $75,000, exclusive of costs and interest.

24  Specifically, Plaintiff seeks to recover past and future lost earnings, medical expenses,

25  emotional distress damages, punitive damages and unpaid wages and penalties.  (Compl.,

26  ¶¶ 21, 29, 33-34, 38-39, 44-45, 49-50, 55-56, 61, 65, 71-72, 77-78, 84-84; *see also* pp.

27  20:27-24:9.)  Plaintiff also seeks attorneys' fees in connection with his claims under

28

NOTICE OF REMOVAL OF CIVIL ACTION TO DISTRICT COURT PURSUANT TO DIVERSITY JURISDICTION

1    FEHA, Cal. Gov't Code section 12965(b), and the California Labor Code for an alleged

2    failure to pay overtime. (*Id.*, pp. 20:27-24:9.)

3         74.   **Lost Wages.**  As for Plaintiff's lost wages, during his entire period of

4    employment his annual salary was always $ 90,000 or more. (Fisher Decl., ¶ 8; McCoy

5    Decl., ¶ 4.)  Plaintiff's alleged lost wages from the date he alleges he went on stress

6    leave, April 11, 2011, through the date of judgment (assuming judgment is entered one

7    year from the date of the filing of this lawsuit), based on his lowest annual salary totals

8    approximately $225,600. *See* Cal. Gov't Code §§ 12965, 12970 (lost wages is calculated

9    through the date of judgment). (McCoy Decl., ¶ 5.)  Thus, the amount in controversy is

10   met based on Plaintiff's claim for lost wages alone.

11        75.   **Overtime.**  Plaintiff also claims that he was purportedly "misclassified" as

12   an exempt executive employee and, thus, seeks overtime pay.  In particular, Plaintiff

13   alleges that he does not supervise employees, is not involved in the hiring or firing of

14   employees, and does not evaluate employees, such that he should receive overtime pay

15   for any work over eight hours in a day or 40 hours in a week. (Compl., ¶58.)  Assuming

16   that Plaintiff worked 5 hours of overtime a week for the three year statutory period

17   (which Defendants deny) at an annual salary of $90,000, this amount equals $50,625 ($45

18   (hourly rate) X 1.5 (overtime premium) X 5 (hours of overtime per week) X 50

19   (workweeks in a year) X 3 (number of years of overtime Plaintiff will argue he can

20   recover)). (McCoy Decl., ¶6.)

21        76.   **Penalties**.  In connection with Plaintiff's overtime claim, he also seeks

22   penalties for allegedly inaccurate wage statements.  According to Plaintiff's

23   methodology, the potential recovery for these penalties is $50.00 for the first violation

24   and $100.00 per pay period for each subsequent violation of section 226, up to a

25   maximum of $4,000. (Compl., ¶65.)  One year's worth of these penalties easily reaches

26   the cap of $4,000 ($50.00 X ($100.00 X 49)), which is the amount Plaintiff will allege he

27   can recover. (McCoy Decl., ¶ 7.)

28

Notice of Removal of Civil Action to District Court Pursuant to Diversity Jurisdiction

77.     Thus, based on Plaintiff's alleged lost wages, unpaid overtime, and penalties, Plaintiff's potential recovery is $280,225.  Adding Plaintiff's alleged emotional distress, medical expenses, and punitive damages, there is no question that this amount exceeds the $75,000 jurisdictional threshold for diversity jurisdiction. (McCoy Decl., ¶ 8.)

78.     **Emotional Distress Damages**.  In addition to lost wages, Plaintiff claims emotional distress damages.  (Compl., ¶¶ 83-84.) While the details of Plaintiff's alleged emotional distress damages are not pled in the Complaint, in cases alleging discrimination, the emotional distress damages award alone often exceeds the $75,000 amount in controversy requirement.  *See, e.g., Elliott v. City of Gardena*, 2001 WL 1255712 (Los Angeles County Superior Court, July 23, 2001) (the jury awarded the plaintiff in a discrimination case $1,650,000 where the plaintiff's only claimed injury was emotional distress damages); *Comey v. County of Los Angeles*, 2007 WL 3022474 (Los Angeles County Superior Court, Aug. 15, 2007) (the jury awarded a plaintiff in a discrimination case $768,286, of which $100,000 was for non-economic damages).  *See also Conney v. University of California Regents*, 2004 WL 1969934 (Los Angeles County Superior Court, July 27, 2004) ($300,000 in past non-economic damages and $600,000 in future non-economic damages awarded to plaintiff claiming discrimination and retaliation).  These awards demonstrate that, for diversity purposes, the value of Plaintiff's claimed emotional distress damages exceeds the $75,000 amount in controversy requirement on its own.

79.     **Punitive Damages**.  Plaintiff also seeks to recover punitive damages in a sum to be determined at trial. (Compl., ¶¶ 34, 39, 45, 50, 56, 72, 78, 84; *see also* pp. 20:27-24:9.)  For amount in controversy purposes, the Court must conclude that Plaintiff will prevail on his claim for punitive damages. *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) (amount in controversy includes potential recovery of punitive damages award).  An examination of jury awards shows that punitive damages awards alone in discrimination cases often exceed the $75,000 amount in controversy

32

requirement. *See Carter v. CB Richard Ellis*, 2001 WL 34109371 (Orange County Superior Court, Oct. 7, 2001) ($600,000 award of punitive damages in discrimination case); *Crangle v. Stanford Univ.*, 2000 WL 33800199 (N.D. Cal., Mar. 30, 2000) (punitive damages award of $200,000 where sole remaining claim was for retaliation based on making complaint of discrimination).

80.   **Attorneys Fees**. Further, it is unimaginable that Plaintiff's counsel would seek less than $75,000 in attorneys' fees for a jury trial of the claims alleged in the Complaint. If Plaintiff's counsel is seeking less than $75,000 in fees, Defendants invite him to stipulate to this fact for purposes of this case.

81.   Thus, it is more likely than not that Plaintiff's alleged damages consisting of lost wages, unpaid overtime, emotional distress, medical expenses, and punitive damages, as well as his claim for penalties and attorneys' fees meet the $75,000 jurisdictional threshold.

82.   **Total Jury Awards**. Moreover, in the unlikely event that Plaintiff should prevail at trial, numerous recent jury awards to plaintiffs in disability discrimination cases have exceeded $75,000. *See Landau v. County of Riverside*, 2010 WL 1648442 (C.D. Cal. 2010) (award of $1,033,500 to employee who brought action against employer based disability discrimination and failure to accommodate); *Dodd v. Haight Brown & Bonesteel LLP*, 2010 WL 4845808 (L.A. County Superior Ct. 2010) (award of $410,520 to employee wrongfully terminated based on disability and medical condition); *Ybarra v. Dacor Holding Inc.*, 2010 WL 2404221 (L.A. County Superior Ct. 2010) (award of $615,236 to employee in disability discrimination and wrongful termination action); *Malone v. Potter*, 2010 WL 330252 (C.D. Cal. 2010) (award of $300,000 to employee in disability discrimination and retaliation action); *Morales v. Los Angeles County Metro. Transp. Auth.*, 2008 WL 4488427 (L.A. County Superior Ct. 2008) (award of $2,247,137 to employee terminated due to disability); *Ismen v. Beverly Hosp.*, 2008 WL 4056258 (L.A. County Sup. Ct.) (award of $1,180,164 in disability discrimination and failure to accommodate action); *Kolas v. Alticor Inc.*, 2008 WL 6040410 (L.A. County Superior Ct.

33

2008) (award of $600,000 to employee claiming disability discrimination); *Vaughn v. CNA Casualty of California*, 2008 WL 4056256 (C.D. Cal. 2008) (award of $850,000 to employee in disability discrimination action); *Orue v. Sears, Roebuck & Co.*, 2007 WL 2456108 (L.A. County Superior Ct. 2007) (award of $173,056 to employee who brought action based on disability discrimination).

## V.   VENUE

83.   Without waiving Defendants' right to challenge, among other things, personal jurisdiction and/or venue by way of a motion or otherwise, venue lies in the Central District of California pursuant to 28 U.S.C. sections 1441(a), 1446(a), and 84(c). This action originally was brought in the Superior Court of the State of California, County of Orange, which is located within the Central District of the State of California.

84.   Moreover, pursuant to California Government Code § 12965(b) venue is proper in Los Angeles County pursuant to the  mandatory special venue provisions of the California Fair Employment and Housing Act ("FEHA").  Gov. Code § 12965(b) ("An action may be brought in any county in the state in which the unlawful practices alleged to have been committed, in the county in which the records relevant to the practice are maintained and administered, or in the county in which the aggrieved person would have worked or would have had access . . . but for the alleged unlawful practice . . . .").

## VI.   SERVICE OF NOTICE OF REMOVAL ON PLAINTIFF AND THE CLERK OF THE SUPERIOR COURT

85.   Pursuant to 28 U.S.C. section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Orange, in the State Court Action.

86.   This Notice of Removal will be served on counsel for Plaintiff.  A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

34

1    87.    In compliance with 28 U.S.C. section 1446(a), true and correct copies of all

2  process, pleadings, and orders filed and/or served in this action are attached as Exhibit

3  "A" to the McCoy Decl.

4  **VII.  PRAYER FOR REMOVAL**

5    88.    WHEREFORE, Defendants pray that the State Court Action now pending in

6  the Superior Court of the State of California for the County of Orange, be removed to the

7  United States District Court for the Central District of California through the timely filing

8  of this Notice of Removal.

9  DATED: September 7, 2012                    SEYFARTH SHAW LLP

10

11                                           By_____

12                                               Jon D. Meer
                                                Casey J.T. McCoy
13                                               Simon L. Yang
                                                Attorneys for Defendants
14                                               BP WEST COAST PRODUCTS LLC; BP
                                                PRODUCTS NORTH AMERICA INC.;
15                                               DALE ERICKSON; DAN ROBINSON; and
                                                MARYCLAIRE HAMMOND

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION TO DISTRICT COURT PURSUANT TO DIVERSITY JURISDICTION

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             )   ss
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  333 S. Hope Street, Suite 3900, Los Angeles, California  90071.  September 7, 2012, I served the within documents:

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT PURSUANT TO DIVERSITY OF CITIZENSHIP JURISDICTION [28 U.S.C. §§ 1332, 1441]**

☐  I sent such document from facsimile machine (213) 270-9601.  I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (213) 270-9601 which confirms said transmission and receipt.

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, addressed as set forth below.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐  by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Los Angeles, California, addressed as set forth below.

James T. Jackson, Esq.
Hope Erin Gray, Esq.
MERHAB ROBINSON & JACKSON                    *Attorneys for Plaintiff*
1551 North Tustin Avenue, Suite 910
Santa Ana, California  92705
jackson@mrjlaw.net
hgray@mrjlaw.net
Telephone:   (714) 972-2333
Facsimile:   (714) 972-2296

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 7, 2012, at Los Angeles, California.

_____
Elsa Terre

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1493 JVS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division** <br> 312 N. Spring St., Rm. G-8 <br> Los Angeles, CA 90012 | [ ] **Southern Division** <br> 411 West Fourth St., Rm. 1-053 <br> Santa Ana, CA 92701-4516 | [ ] **Eastern Division** <br> 3470 Twelfth St., Rm. 134 <br> Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**By Fax**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
SCOTT TENNEY, an individual,

**DEFENDANTS**
BP WEST COAST PRODUCTS, LLC, a Delaware Limited Liability Company; BP PRODUCTS NORTH AMERICA, INC. a Maryland corporation; DALE ERICKSON, an individual; DAN ROBINSON; an individual; MARYCLAIRE HAMMOND, an individual; and DOES 1 - 50 inclusive,

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
MERHAB ROBINSON & JACKSON
James T. Jackson (SBN 153587); Hope Erin Gray (SBN 275625)
1551 North Tustin Avenue, Suite 910
Telephone: (714) 972-2333
Facsimile: (714) 972-2296

**Attorneys** (If Known)
SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389); Casey J.T. McCoy (SBN 229106);
Simon L. Yang (SBN 260286)
2029 Century Park East, Suite 3500; Los Angeles, CA 90067
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ Excess of 75,000.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §§ 1332, 1441, and 1446 (Diversity).

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☒ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

SACV12 - 1493 JVS (RNBx)

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2
13992962v.1

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                             ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| COUNTY OF ORANGE | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | MARYLAND AND ILLINOIS |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| COUNTY OF LOS ANGELES | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date September 7, 2012
                                        Simon L. Yang

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com